O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| PHILLIP DAVIS,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>　　　　　Respondent. | Case No. ED CV 15-02020-DFM<br><br>MEMORANDUM OPINION<br>AND ORDER |

Plaintiff Phillip Davis ("Plaintiff") appeals from the final decision of the Administrative Law Judge ("ALJ") denying his applications for Social Security disability benefits. Because the ALJ's decision was supported by substantial evidence in the record, the Commissioner's decision is affirmed and the matter is dismissed with prejudice.

## I.

## BACKGROUND

Plaintiff filed an application for Social Security disability insurance benefits ("DIB") and supplemental security income ("SSI") on August 23, 2010, alleging disability beginning December 19, 2009. Administrative Record

("AR") 341-44. After Plaintiff's application was denied, he requested a hearing before an ALJ. AR 170-72. On March 12, 2012, April 17, 2014, and September 4, 2014, hearings were held on Plaintiff's claim for benefits. AR 41-139. On October 8, 2014, the ALJ issued an unfavorable decision. AR 14-38. In reaching this decision, the ALJ found that Plaintiff had the severe impairments of status-post fracture of the right patella, with numerous surgical procedures to include a subtotal patellectomy, and lumbosacral degenerative disc disease, with a history of back surgery in 2001. AR 23. The ALJ determined that Plaintiff met the criteria of medical listing 1.03 from December 19, 2009 through December 31, 2011 because he could not, after he fractured his right patella, return to effective ambulation within 12 months. AR 25-27. The ALJ accordingly concluded that Plaintiff was disabled from December 19, 2009 through December 31, 2011. AR 27.

The ALJ found that Plaintiff's condition improved such that he no longer met listing 1.03 as of January 1, 2012. AR 28. Beginning January 1, 2012, the ALJ found that Plaintiff had the RFC to perform less than the full range of light work with the following additional limitations:

> [Plaintiff] can lift, carry push, or pull 20 pounds occasionally and 10 pounds frequently; [Plaintiff] can stand and/or walk two hours out of an eight-hour workday, with need to use a cane if out of the immediate work area; [Plaintiff] can sit six hours out of an eight-hour workday; [Plaintiff] cannot balance, stoop, crawl, or kneel, but he can occasionally bend; [Plaintiff] cannot balance, stoop, crawl, or kneel, but he can occasionally bend; [Plaintiff] cannot climb ladders, ropes, or scaffolds; [Plaintiff] must avoid hazardous machinery and unprotected heights; and [Plaintiff] cannot have foot controls.

Id.

Based on a vocational expert's testimony, the ALJ found that Plaintiff could perform jobs that exist in significant numbers in the national economy (*e.g.*, information clerk, charge account clerk, and mail clerk) and therefore was not disabled. AR 32. After the Appeals Council denied further review, this action followed. AR 1-2.

## II.

## ISSUES PRESENTED

The parties dispute whether the ALJ (1) properly assessed Plaintiff's RFC; and (2) erroneously determined that Plaintiff was no longer disabled as of January 1, 2012. See Joint Stipulation ("JS") at 4.

## III.

## DISCUSSION

### A.   The ALJ Properly Assessed Plaintiff's RFC

Plaintiff contends that the ALJ's RFC assessment is not supported by substantial evidence because it precludes Plaintiff from stooping, but states that he can "occasionally bend." JS at 5. Plaintiff claims that a restriction from stooping is inconsistent with an ability to occasionally bend because bending and stooping are the same for the purposes of disability analysis. JS at 6.

A claimant's "residual functional capacity" is the most a claimant can still do despite his limitations. Smolen v. Chater, 80 F.3d 1273, 1291 (9th Cir. 1996). An ALJ will assess a claimant's RFC based on all the relevant evidence of record and will consider all of the claimant's medically determinable impairments, whether found to be severe or not. 20 C.F.R. §§ 404.1545(a)(2), (a)(3), (e), 416.945(a)(2), (e). An RFC assessment is ultimately an administrative finding reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). However, an RFC determination is based on all of the relevant evidence, including the diagnoses, treatment, observations, and opinions of medical sources, such as treating and examining physicians. Id.

3

The ALJ properly considered Plaintiff's testimony and reviewed the medical evidence in detail in reaching his conclusion that Plaintiff retained the RFC to perform light work with some limitations. AR 28-31. The ALJ arrived at his assessment following a detailed discussion of the objective medical evidence. In particular, the ALJ noted the findings of the consulting examiner, Concepcion Enriquez, M.D., who found fewer limitations than the ALJ's RFC assessment. AR 30. Dr. Enriquez opined that although Plaintiff had some decreased range of motion in his right knee, he could perform light work with occasional bending, stooping, and twisting, so long as he avoided kneeling on the right knee. AR 603-04. The ALJ also noted the limitations offered by Arnold Ostrow, M.D., an impartial medical expert. AR 30-31. The ALJ's limitations included greater limitations than those assessed by Dr. Ostrow based on Plaintiff's subjective complaints, such as the use of a cane outside of the immediate work area. AR 31. Thus, in assessing Plaintiff's RFC, the ALJ gave Plaintiff the benefit of the doubt and found greater limitations than those found in any medical opinion in the record.

Plaintiff's argument that the restriction from stooping is incompatible with an ability to occasionally bend is unfounded. "Stooping, kneeling, crouching, and crawling are progressively more strenuous forms of bending parts of the body, with crawling as a form of locomotion involving bending." SSR 85-15, 1985 WL 56857, *7 (Jan. 1, 1985). In particular, "stooping" is defined as bending the body downward and forward by bending the spine at the waist. Id. Thus, stooping requires some ability to bend. However, the converse is not necessarily true; that is, bending does not require an ability to stoop. Plaintiff provides no authority for the proposition that a preclusion from stooping encompasses all types of bending, other than bending the spine at the waist. Thus, Plaintiff fails to show that the RFC's assessment of occasional bending is irreconcilable with the inability to stoop.

4

Plaintiff also contends that Social Security Rulings 85-15 and 96-9p direct a finding of disability when the claimant is limited to no stooping. JS at 13. However, Plaintiff misconstrues these rulings. SSR 85-15 holds that "if a person can stoop occasionally (from very little to up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact." SSR 85-15, 1985 WL 56857, at *7. SSR 96-9p clarifies this statement by explaining that a complete inability to stoop would erode the unskilled sedentary occupational base such that "a finding that the individual is disabled would *usually* apply." SSR 96-9p, 1996 WL 374185, *8 (July 2, 1996) (emphasis added). Therefore, contrary to Plaintiff's assertion, the ALJ was not bound to determine that Plaintiff was disabled based upon his inability to stoop.

Even if the ALJ erred in assessing Plaintiff's RFC, any error was harmless. SSR 96-9p states that "a finding that an individual has the ability to do less than a full range of sedentary work does not necessarily equate with a decision of 'disabled.' . . . [C]onsideration must still be given to whether there is other work in the national economy that the individual is able to do, considering age, education, and work experience." Id. at *1. Indeed, when provided with a hypothetical question which included the limitations found in the ALJ's RFC assessment, the vocational expert in this case identified several jobs at the sedentary level available in the national economy which Plaintiff could perform despite his limitations. See AR 32-33, 81. Inclusion of the no stooping limitation and occasional bending in Plaintiff's RFC would not, therefore, have affected the ALJ's ultimate determination that Plaintiff was not disabled. Thus, any possible error was harmless, and Plaintiff is not entitled to relief. See Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) (noting error that does not affect ALJ's decision is harmless).

///

**B.** **Substantial Evidence Supports the ALJ's Finding that Plaintiff Was Not Disabled as of January 1, 2012**

The ALJ found that Plaintiff was entitled to a "closed period" of benefits from December 19, 2009 through December 31, 2011, based on his finding that Plaintiff's medical condition improved on January 1, 2012. AR 25–27.

The ALJ explained that Plaintiff's knee was injured on December 20, 2009, and that he had reconstructive surgery to repair it. AR 26-27. He was placed in a knee immobilizer, continued to exhibit significant symptoms, and as of August 10, 2010, he was using a wheelchair with a limited range of motion. AR 26, 435. Plaintiff underwent physical therapy from August 2011 through November 2011, and showed improvement over time despite some difficulty standing and sitting. AR 27, 512-48.[1] Taking into account the objective medical evidence and Plaintiff's subjective complaints, which indicate Plaintiff's inability to ambulate effectively during this period, the ALJ found that Plaintiff's knee impairment met the reconstructive surgery listing between December 2009 and December 2011.

The ALJ then evaluated the medical evidence after this period, and found that as of January 1, 2012, Plaintiff showed improvement. AR 30. As the ALJ noted, Plaintiff "continued to receive medication treatment, but there was no evidence supporting an ongoing inability to ambulate effectively." AR 30. Plaintiff received general care treatment from Dr. Eric Bekemeier through

---

[1] Plaintiff's last physical therapy record in November 2011 indicates that Plaintiff showed improvement in all four functional goals of the therapy program: ascending/descending 2 flights of stairs daily for household and community ambulation, walking for 1 hour daily with intermittent directional changes, jumping and landing for 1 hour daily 4 times a week, and sleeping without disruptions for 8 hours daily. AR 514. The record shows that Plaintiff had already met the goal of sleeping without disruptions for 8 hours daily and was improving toward the other three goals. Id.

December 2012, but the records show that this treatment mostly consisted of medication management. See AR 553-70. "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for [disability] benefits." Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006); see also Parra v. Astrue, 481 F.3d 742, 750–51 (9th Cir. 2007) (finding "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"). Plaintiff points to a January 10, 2012 record from Dr. Berkheimer indicating that Plaintiff had a right leg limp, however no evidence at that time demonstrates that Plaintiff needed a cane or wheelchair to ambulate. See AR 555-57. Additionally, on May 22, 2014, Dr. Concepcion opined that Plaintiff could walk unassisted despite his continued limp on the right leg. AR 604.

The ALJ also noted that Plaintiff failed to seek treatment in 2013 or 2014. See Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007) ("Our case law is clear that if a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated."). Plaintiff primarily relies on medical records from physical therapy sessions in 2011 to demonstrate the severity of his symptoms post-reconstructive surgery. However, Plaintiff's last physical therapy session took place on November 9, 2011, and the progress notes indicate that Plaintiff was improving in all areas. See AR 514. In particular, the progress note related to Plaintiff's ability to walk stated: "The patient reports a reduction in symptoms and improvement in function of more than 50% since initiating therapy. Achieving the patient's goals with continued therapy is expected." Id. After this visit, Plaintiff was administratively discharged from physical therapy after not attending a session in over 30 days. AR 512. Plaintiff attributed his failure to seek further treatment to losing his Medi-Cal insurance, however, as the ALJ noted,

7

1  Plaintiff did not explain why he did not seek out low- or no-cost medical care
2  when his symptoms were improving. See Molina v. Astrue, 674 F.3d 1104,
3  1114 (9th Cir. 2012) ("Although [claimant] provided reasons for resisting
4  treatment, there was no medical evidence that . . . resistance was attributable
5  to her mental impairment rather than her own personal preference, and it was
6  reasonable for the ALJ to conclude that the 'level or frequency of treatment
7  [was] inconsistent with the level of complaints.'") (quoting SSR 96-7p).

8  Finally, the ALJ pointed to the findings of several medical examiners
9  who found that Plaintiff could perform the demands of light work during the
10  relevant period. AR 30-31. Dr. Enriquez evaluated Plaintiff on May 22, 2014,
11  and found that he had some tenderness in the lumbosacral spine area, but
12  normal range of motion, no muscle spasm, and negative straight leg raises. AR
13  30, 603. Dr. Enriquez found that despite Plaintiff's decreased range of motion
14  in the right knee, his scar was well healed and he had normal extension. AR
15  603–04. All other physical and neurological results were normal. AR 30, 602-
16  04. Similarly, Dr. Ostrow reviewed all the medical evidence of record and
17  concluded that Plaintiff could perform a reduced range of light work, including
18  occasional bending, stooping, and twisting, provided that he avoided kneeling
19  on his right knee. AR 30, 604. [2]

20  Accordingly, substantial evidence supports the ALJ's finding that
21  Plaintiff was not disabled as of January 1, 2012.
22  ///

23
24      [2] Plaintiff points out that on February 22, 2012, Dr. Bekemeier noted
25  that "surgeons won't touch him or affect his legs anymore." AR 639.
    Therefore, Plaintiff argues there was no more to be done for his knee. JS at 17.
26  However, in this same report, Dr. Bekemeier also noted that Plaintiff's
    symptoms were alleviated with continued physical therapy, no weight bearing,
27  pain relievers, and rest. AR 639.
28

8

# IV.

## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED and the action is DISMISSED with prejudice.

Dated:   October 26, 2016

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge

9